## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 28 2018, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of K.H., J.H., & Ke.H. (Children) and A.H. (Mother);

A.H. (Mother),

*Appellant-Defendant,*

v.

The Indiana Department of Child Services,

*Appellee-Plaintiff*

March 28, 2018

Court of Appeals Case No. 48A02-1709-JT-2253

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No.
48C02-1608-JT-70
48C02-1608-JT-71
48C02-1608-JT-72

**May, Judge.**

[1] A.H. ("Mother") appeals the termination of her parental rights to K.H, J.H., and Ke.H. (collectively, "Children"). She argues the trial court's findings do not support its conclusions: (1) there was a reasonable probability the conditions that resulted in Children's removal would not be remedied; (2) termination is in Children's best interests; and (3) DCS had presented a satisfactory plan for the care and treatment of Children following termination. We affirm.

## Facts and Procedural History

[2] Mother and R.H. ("Father")[1] are the biological parents of K.H., born January 12, 2009; J.H., born December 1, 2010; and Ke.H., born April 9, 2012 (collectively, "Children"). In April 2014, the Department of Child Services ("DCS") received a report of domestic violence between Mother and Father, and DCS staff observed unexplained bruises on Children. That same month, Mother and Father agreed to an Informal Adjustment to address those issues.

[3] On August 8, 2014, Children were removed from Mother's care after DCS substantiated a report that Children were victims of physical abuse and neglect. DCS staff observed an abrasion on J.H.'s face, a severe burn on Ke.H.'s thumb, a long cut on K.H.'s inner thigh, and various other bruises and cuts on

---

[1] Father consented to Children's adoptions and does not participate in this appeal.

Children. Children were placed in foster care, where they have remained throughout these proceedings.[2]

[4]    On August 11, 2014, DCS filed petitions alleging each of Children was a Child in Need of Services ("CHINS"). On October 7, 2014, the trial court adjudicated Children as CHINS after Mother admitted Children were in need of services "due to the unexplained bruising to the [C]hildren and the necessity of services to address parenting deficiencies[.]" (App. Vol. II at 15.)[3] On December 17, 2014, the trial court entered dispositional orders for each child and ordered Mother to refrain from using illegal drugs and alcohol; complete random drug screens; complete a substance abuse assessment and follow all recommendations; obtain and maintain stable housing and employment; keep all appointments with service providers; and participate in visitation with Children.

[5]    In its order, the trial court made detailed findings regarding the progress of the CHINS case. Those findings illustrate Mother's inconsistent compliance with services throughout the proceedings:

> [7a.] [As of the review hearing on February 10, 2015,] [Mother] had made some strides to enhance parenting capabilities at this stage of the case. Mother had completed a parenting assessment

---

[2] As noted in the trial court's findings, Children were in separate foster homes for a portion of the proceedings, but at the time of the termination hearing, they were in the same foster home.

[3] The trial court entered a separate order for each child. The language in each order is virtually identical. We will cite the order concerning J.H. unless otherwise noted.

and participated in recommended home[-]based therapy. She was consistently trying to obtain stable employment, had a substance abuse assessment scheduled, and had provided negative screens to this point;

* * * * *

[8b.] [As of the review hearing on August 5, 2015,] [Mother] had now been unsuccessfully closed out of home-based services due to multiple failures to attend or unexcused cancellations. Visitations by Mother with [Children] were also unsuccessfully closed by the engaged service provider due to consecutive missed sessions without valid excuses;

* * * * *

[9b.] [As of the review hearing on February 3, 2016,] Mother had not finished parenting classes recommended from her previously completed parenting assessment, [but] was participating in home-based therapy again after her original referral had been unsuccessfully closed;

[9c.] Mother tested positive for an illegal controlled substance in October of 2015, necessitating further substance abuse treatment;

* * * * *

[10b.] [As of the review hearing on August 3, 2016,] Mother was not participating in substance abuse treatment and was not responding consistently to [drug] screen requests. Mother was

> [not][4] consistently participating in home based therapy, instead
> having multiple failures to attend scheduled sessions or
> cancelling sessions without authorization[.]

(*Id*. at 16-17) (footnote added) (brackets added for clarity).

[6] Based on Mother's non-compliance with services and multiple positive drug screens, DCS filed petitions to terminate her parental rights to Children on August 26, 2016. Despite those filings, DCS offered Mother services until February 2017. Mother refused to take any further drug screens after October 16, 2016, and the court suspended her visitation with Children at that time. The trial court agreed to allow Mother to resume visitation in February 2017 if she completed substance abuse treatment, but Mother did not fulfill that condition. The trial court held hearings on the termination petitions on July 26 and August 1, 2017. Based on the evidence presented at those hearings, the trial court issued orders terminating Mother's parental rights to Children on August 29, 2017.

# Discussion and Decision

[7] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind.

---

[4] It would seem, based on the remainder of the sentence, the trial court inadvertently omitted the word "not" in this sentence.

Ct. App. 2004), *trans. denied*.  Instead, we consider only the evidence and reasonable inferences most favorable to the judgment.  *Id.*  In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous.  *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[8]  "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution."  *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination.  *In re K.S.*, 750 N.E.2d at 837.  The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities.  *Id.* at 836.

[9]  To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[10] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[11] Mother argues the trial court's findings do not support its conclusion there was a reasonable probability the conditions that resulted in Children's removal from

her care would not be remedied. However, she does not contest whether the trial court's findings support its conclusion that the continuation of the parent-child relationship posed a threat to the well-being of Children. DCS does not have to prove both threat to well-being and reasonable probability conditions will not be changed because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that DCS must prove only one by clear and convincing evidence. *See* Ind. Code § 31-35-2-4(b)(2)(B) (listing three options and noting DCS has to prove "one"). Because Mother does not present an argument challenging the trial court's conclusion the continuation of the parent-child relationship posed a threat to Children's well-being, we may affirm under that portion of the statute and, thus, need not address her argument about the probability that conditions will be remedied. *See In re L.S.*, 717 N.E.2d at 209 (because Ind. Code § 31-35-2-4(b)(2)(B) is written in the disjunctive, court needs to find only one requirement to terminate parental rights).

### *Best Interests of Children*

[12] In determining what is in Children's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that

conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[13] Mother does not challenge findings related to the trial court's conclusion that termination was in Children's best interests. Therefore, those unchallenged findings stand proven. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."). Thus, we consider whether the trial court's findings support its conclusion that termination was in Children's best interests.

[14] Mother argues the trial court's findings did not support its conclusion that termination was in Children's best interests for a variety of reasons. First, she notes her multiple evictions but states, "[M]other has acquired a home for the [C]hildren, in which she cannot be evicted from. Stability of environment is an important factor in the matter of raising children but in and of itself does not serve as a valid basis for terminating parental rights." (Br. of Appellant at 17) (citation to the record omitted). Second, Mother argues many of her positive drug screens "can be attributed to her dental issues [for] which she had valid prescriptions." (*Id.*) Finally, Mother asserts: "While the [C]hildren are thriving in [their current] placement, little harm, if any, would come to the [C]hildren if the Court allowed [M]other the opportunity to progress in her suboxone treatment and restore the family home." (*Id.*)

[15] Mother is correct that instability of housing or environment cannot be the sole basis for terminating parental rights. *See In re G.Y.,* 904 N.E.2d at 1265 (child's need for stability or permanency not dispositive when considering child's best interests). However, the trial court found many other reasons to support its conclusion that termination of Mother's parental rights was in Children's best interests, including Mother's non-compliance with services and her continued use of illegal drugs. The trial court also found Mother provided false information about her participation in a substance abuse rehabilitation program; Mother refused drug screens after October 16, 2016; Mother failed to demonstrate the progress required to reinstate visitation with Children after visitation was suspended in October 2016; and Mother had been evicted from different residences four times and has multiple civil judgments against her for non-payment of rent. In addition to the findings involving Mother, trial court found the Children were doing well in placement, that their foster mother was helping Children resolve their behavioral issues, and Children wanted to be adopted by foster family.

[16] Regarding the home Mother had acquired by the time of the termination hearings, Mother testified she had a house she had been "working on" since January 2017. (Tr. Vol. II at 45.) When asked for the address of the house, Mother stated, "I don't really want to say where it's at right this second because it's not ready[.]" (*Id.* at 44.) When asked how she came to own the house, Mother first said a friend gave it to her and when asked that friend's name, Mother stated, "It's just a friend of mine. I'm not giving you his name." (*Id.* at

45.) Mother finally stated her father gave her the house. The trial court was not required to infer from Mother's ambiguous testimony that Mother had a house; nor would such fact resolve the numerous other problems that prohibited Mother from being reunited with Children.

[17] Mother's additional arguments regarding her drug screens and alleged compliance with services are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). We conclude the trial court's findings supported its conclusion that termination was in Children's best interests. *See Prince v. Dept. of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007) (termination in children's best interests based on Mother's habitual pattern of drug use and non-compliance with services).

### *Satisfactory Plan for Care and Treatment*

[18] Pursuant to Indiana Code section 31-35-2-4(b)(2)(D), parental rights cannot be terminated unless DCS provides sufficient evidence of a satisfactory plan for the care and treatment of the children following termination. We have held "[t]his plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.,* 804 N.E.2d at 268.

[19] Mother argues DCS did not present a plan for Children after the termination of Mother's parental rights. She states in her brief, "[t]he DCS case manager and the CASA worker hoped the [C]hildren would remain with the current foster

placement and they would adopt but that plan was not set in stone." (Br. of Appellant at 18.) The trial court found:

> [21g.] [Children] are placed in pre-adoptive placement with the licensed foster mother, [S.G.]. [J.H.] has been placed with the foster mother since July of 2015; [Ke.H.] and [K.H.] joining [sic] that foster home in April of 2017;
>
> [21h.] [Children] are all appropriately cared for and foster mother works hard on [J.H.'s] behavioral issues. There are no concerns for criminal conduct, substance abuse, or chronic inability to provide basic necessities for [Children] while in the care of the foster mother, who is willing and desiring to adopt the sibling group;
>
> [21i.] Adoption of [Children] is a satisfactory plan for [Children's] permanency.
>
> * * * * *
>
> [22d.] [Children] all report that they wish to stay in their current foster home permanently;
>
> * * * * *
>
> 28. The description of the care, love, and attention given to [Children] by the foster family, as well as the opinions [of service providers] cited above [in the order], also demonstrate that adoption is a satisfactory plan for the care and treatment of [Children], which is now also found for purposes of these termination proceedings.

(App. Vol. II at 25-8.) Based on those findings, the trial court concluded, "The plan of DCS for the care and treatment of [Children], that being adoption of [Children] is acceptable and satisfactory." (*Id*. at 29.)

[20] Mother does not cite case law to support her contention that Children's post-termination plan needed to be "set in stone." (Br. of Appellant at 18.) As such, Mother's argument is only an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses). We conclude the trial court's findings support its conclusion that there existed a satisfactory plan for the care and treatment of Children after the termination of Mother's parental rights. *See In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008) (adoption is satisfactory post-termination plan).

# Conclusion

[21] We need not address Mother's argument regarding whether there was a reasonable probability the conditions that resulted in Children's removal would be remedied, because Mother did not challenge the continuation of her relationship with Children poses a threat to Children and proof of one of the elements in Indiana Code section 31-35-2-4(b)(2)(B) is sufficient to support termination. Further, the trial court's findings support its conclusions termination was in Children's best interests and a satisfactory plan existed for Children's care and treatment following termination. Accordingly, we affirm.

Affirmed.

Riley, J., and Mathias, J., concur.